Filed 2/25/21  P. v. Thompson CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BJ ANTHONY THOMPSON,<br><br>    Defendant and Appellant. | A158058<br><br>(San Mateo County<br>Superior Court No. 19NF002197A) |

BJ Anthony Thompson appeals from a conviction and sentence imposed on him after a jury found him guilty of second degree robbery and possession of methamphetamine.  The focus of the appeal is on a sentencing enhancement for the use of a knife in the commission of the robbery, which resulted in the imposition of an additional year in prison under Penal Code section 12022, subdivision (b)(1),[1] consecutive to the prison term imposed for the robbery.  Because the jury was erroneously given an instruction permitting it to find that a knife is an inherently deadly weapon, and because we conclude the error was prejudicial on this record, we shall vacate the jury's true finding under section 12022, subdivision (b)(1).

---

[1] Further undesignated statutory references are to the Penal Code.

1

# I.

Zachary B., a retail loss prevention officer in the Marshall's San Bruno store, noticed a suspected shoplifter while monitoring the store's surveillance cameras. Thompson was wearing a backpack. Zachary B. saw Thompson picking up shoeboxes, "walking around with them a little bit suspiciously," and removing shoes from the boxes, then placing the shoes in other parts of the store. He also saw Thompson put a pair of slippers or sandals and a pair of shoes into his backpack and then walk out of the store.

Zachary B. followed Thompson outside of the store and approached him. When Zachary B. informed Thompson that he was a loss prevention officer and said he wanted to talk about the merchandise Thompson had taken from the store, Thompson opened his backpack and handed Zachary B. a single sandal. Zachary B. asked Thompson to give him the other shoes. Thompson denied having anything else, and began to walk away, but Zachary B. stood in his way.

According to Zachary B., Thompson then pulled out "something that looked like a knife" with what appeared to be "a short blade." When he initially spoke to police afterward, Zachary B. did not mention Thompson threatening him with a knife. Then later, when he recalled Thompson pulling out a knife, he said he did not get a good look at it and that he could not tell what color the knife was because it was "kind of dark" outside. He also could not clearly see Thompson's hands and admitted that he only " 'kind of saw' " the object in Thompson's hands. In a later statement Zachary B. gave to the police, he was more definitive that the object Thompson wielded was a small folding knife with a silver blade.

Zachary B.'s account of his confrontation with the knife-wielding Thompson was as follows: Thompson was an arm's length from Zachary B.

when Thompson "kind of pointed" the knife toward Zachary B. and told Zachary B., " 'Don't test me.' " Zachary B. immediately backed away from Thompson so that Thompson could not stab him. Zachary B. testified that he "feared for [his] life" at that moment. A witness then got between Thompson and Zachary B., which alleviated Zachary B.'s sense of fear. The witness left to call the police, and Thompson walked away.

Notwithstanding his fear, Zachary B. followed Thompson for a quarter of a mile. At some point, Zachary B. returned to Marshall's because he realized that trying to recover a pair of shoes was not worth the risk of being injured. Thompson was later arrested at a nearby car wash. In a search of his person, police found he was carrying methamphetamine but no knife.

The next day, Zachary B. looked for the backpack Thompson had with him during the incident. He walked to the car wash where Thompson had been arrested and looked into a particular bush because "it just seemed like somewhere someone would stash something." Thompson's backpack was in the bush. Zachary B. looked inside and found two pairs of shoes. The shoes were the same ones he saw Thompson take the night before. Zachary B. closed the backpack and called the police. When police arrived, they searched the backpack and found a black folding knife inside.

At trial, Thompson acknowledged carrying a pocket-knife on the day he was accused of shoplifting at the Marshall's San Bruno store, but denied pulling a knife on Zachary B.

The San Mateo County District Attorney subsequently filed an information against Thompson alleging two counts. Count one, as amended, alleged second degree robbery in violation of section 212.5, subdivision (c). The information specially alleged that Thompson personally used a deadly and dangerous weapon during the commission of the robbery in violation of

3

section 12022, subdivision (b)(1). Count two alleged that Thompson possessed methamphetamine in violation of Health and Safety Code section 11377, subdivision (a).

A jury later found Thompson guilty on both counts and found the use of a deadly weapon enhancement to be true. The court imposed a sentence of two years' imprisonment, the low term for the robbery conviction, plus a consecutive one-year term for the use of a deadly weapon enhancement, resulting in an aggregate sentence of three years.

Thompson timely appealed.

## II.

The sole challenge Thompson raises on appeal is to the one-year sentence enhancement imposed on him for violating section 12022, subdivision (b)(l). He advances two arguments in support of that challenge. First, he argues, the evidence was insufficient to support the jury's finding that he used a deadly weapon during the commission of robbery. (*In re B.M.* (2018) 6 Cal.5th 528 (*B.M.*).) Second, he argues, the court erred by instructing the jury it could find he used a deadly weapon either on the theory that a knife is an inherently dangerous weapon (which is legally incorrect) or on the theory that he used a knife in a manner that was likely to cause great bodily injury (which is legally correct even if factually wanting), and on the record before us, this "alternative-theory error" prejudiced him. (*People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*).)

We reject Thompson's sufficiency of the evidence challenge, but agree with his claim of instructional error and conclude the error compels reversal of the section 12022, subdivision (b)(l) enhancement.

4

## A.

Under section 12022, subdivision (b)(1), any "person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." Use of a deadly or dangerous weapon is not an element of second degree robbery, the felony offense that the section 12022, subdivision (b)(1) enhancement accompanied in this case.

When the sufficiency of the evidence is an issue on appeal, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The reviewing court accepts as true every fact a reasonable juror could find from the evidence. (*Id.* at p. 576.) It is of no consequence that the trier of fact, believing other evidence, or drawing different inferences, might have reached a contrary conclusion. (*Id.* at pp. 576–577.) " '[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

The ultimate question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; see *People v. Johnson, supra,* 26 Cal.3d at p. 576.) A conviction will not be reversed for insufficiency of the

5

evidence unless it "clearly appear[s] that upon no hypothesis whatever is there sufficient substantial evidence to support" the verdict. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) The standards are the same when a reviewing court is assessing the sufficiency of the evidence to support a sentencing enhancement. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1197, abrogated on another ground by *People v. Rangel* (2016) 62 Cal.4th 1192.)

A deadly weapon is any object that is inherently deadly or one that is used in such a way that death or great bodily injury is likely. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029 (*Aguilar*).) It is well-settled that a knife is not an inherently deadly weapon as a matter of law. (See *B.M.*, *supra*, 6 Cal.5th at p. 533; *People v. McCoy* (1944) 25 Cal.2d 177, 188.) Thus, the jury in this case was required to determine whether, under the *Aguilar* standard, Thompson used a knife "in a manner not only capable of producing but also *likely to produce* death or great bodily injury." (*B.M.*, *supra*, at p. 530, italics in original; see *Aguilar*, *supra*, 16 Cal.4th at p. 1036.)

At issue in *B.M.*, was a section 12022, subdivision (b)(1) finding on a record where the appellant, a juvenile, repeatedly jabbed a six-inch long butter knife with serrated blade and a rounded tip into her sister's legs, while the sister tried to avoid harm by covering her legs with a blanket. (*B.M*, *supra*, 6 Cal.5th at pp. 530–532.) The sister was not seriously injured, but testified that her pain during the attack was a five or six out of ten. (*Id.* at pp. 531–532.) The Supreme Court held that the appellant's acts were not likely to cause death or great bodily injury and thus did not constitute the use of a deadly weapon. (*Id.* at p. 536.)

Applying the *Aguilar* standard, the *B.M.* court explained that, to constitute use of a weapon in a manner likely to produce great bodily injury,

6

the evidence must show the weapon was actually used—not merely capable of being used—in a way that made it probable great bodily injury or death would result. (See *B.M.*, *supra*, 6 Cal.5th at p. 533 [likely means probable]; *id.* at p. 538 ["the inquiry must focus on the evidence of how [the defendant] actually used the knife, not on various conjectures as to how [he] could have used it"].) In reversing for insufficiency of evidence, the court stressed that the appellant struck only the victim's legs with the knife and avoided her "head, face, or neck, or . . . any exposed part of her body." (*Id.* at p. 536.) It also noted that the appellant applied only "moderate pressure" to the victim's body. (*Ibid.*) Finally, although there was evidence that the defendant poked the victim multiple times, the court noted that the evidence did not show that the defendant "wielded the knife wildly or uncontrollably." (*Id.* at p. 538.)

Several Court of Appeal decisions applying the *Aguilar* standard are instructive. In *In re Brandon T.* (2011) 191 Cal.App.4th 1491 (*Brandon T.*), another case involving a butter knife, the appellant pressed the knife against the victim's face and neck, but the knife broke while he was doing so. (*Id.* at p. 1494.) The victim suffered welts and scratches to his face and neck. (*Id.* at pp. 1494–1495.) That was held not to be an act likely to cause death or great bodily injury. (*Id.* at p. 1497.) The court held that the knife was not used in a manner likely to produce death or great bodily injury primarily because the victim's injuries were not significant, which the court held was a relevant fact in determining whether an object was used as a dangerous weapon. (*Ibid.*)

*In re D.T.* (2015) 237 Cal.App.4th 693 (*D.T.*) is helpful to consider by contrast to *Brandon T.* There, the appellant, another juvenile, "restrained the victim using her hood" and used a pocket-knife with a sharp and pointy three-inch blade to poke the victim's upper back multiple times. (*Id.* at p. 699.) The victim testified that the poking caused her "some pain" and that

7

she was afraid the defendant might injure her. (*Id*. at pp. 697, 699–700.) The victim's skin was red where the defendant poked her. (*Id*. at p. 697.) A police officer testified as an expert in knives and opined that the defendant's knife could have caused the victim's death. (*Id*. at p. 700.) The appellate court held that the defendant's acts were likely to cause death or great bodily injury because the defendant pressed a sharp knife into the victim's back while restraining her against her will. (*D.T.*, *supra*, 237 Cal.App.4th at p. 700.) *D.T.* is one of a number of decisions so holding on similar facts. [2]

Though the issue is close, we conclude the facts here are closer to *D.T.*, *Koback*, *Simons*, *Page* and *Smith* than to *B.M.* and *Brandon T.* Thompson brandished a sharp-edged knife within striking distance of Zachary B. and verbally threatened him, saying, " 'Don't test me.' " " 'In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, *and all other facts relevant to the issue*.' " (*B.M.*, *supra*, 6 Cal.5th at p. 533, italics added.) Reading the facts to favor the prosecution, as we must, this was a robbery by someone who brought a knife to his task and demonstrated an intent to use it on the victim. (See *People v. McCoy* (1944)

---

[2] See *People v. Koback* (2019) 36 Cal.App.5th 912, 924 (*Koback*) [evidence that defendant held car key sharp-end first in his closed fist as he lunged at victims was sufficient to show key was likely to cause death or great bodily injury]; *People v. Simons* (1996) 42 Cal.App.4th 1100, 1107 (*Simons*) ["[t]he evidence clearly demonstrated that the screwdriver was capable of being used as a deadly weapon and that defendant intended to use it as such if the circumstances required"]; *People v. Page* (2004) 123 Cal.App.4th 1466, 1468–1469 (*Page*) [a "sharp pencil" is likely to cause death or great bodily injury when it is placed directly against the victim's neck]; *People v. Smith* (1963) 223 Cal.App.2d 431, 432 (*Smith*) [pre-*Aguilar*; holding a knife against the victim's neck is an act likely to cause death or great bodily injury].)

25 Cal.2d 177, 193 [" 'The drawing of a weapon is generally evidence of an intention to use it.' "].) Because a defendant's intent is a circumstance that may be considered in the *Aguilar* assessment of whether an object not inherently deadly was actually used as a deadly weapon (see *Simons*, *supra*, 42 Cal.App.4th at p. 1107), a jury could rationally have concluded that, but for the fortuity of Zachary B. withdrawing to protect himself, great bodily injury was probable here.

**B.**

The jury was instructed to address the sentencing enhancement allegation in accordance with CALCRIM No. 3145, which, at the time of trial, read in pertinent part as follows:

"If you find the defendant guilty of the crime charged in Count 1, Robbery, you must then decide whether the People have proved the additional allegation that the defendant personally used a deadly or dangerous weapon during the commission of that crime. [¶] A *deadly or dangerous weapon* is any object, instrument, or weapon that is inherently deadly or dangerous *or* one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."[3]

Thompson did not object to or request modification of this instruction. But where, as here, a defendant asserts that an instruction is incorrect in

_____

[3] CALCRIM No. 3145 has been revised so that it is clear by the use of brackets that the disjunctive inherently deadly language is to be used only where the weapon involved qualifies as such as a matter of law. (Judicial Council of California Criminal Jury Instruction No. 3145 (rev. Sept. 2020) ["A *deadly* [*or dangerous*] *weapon* is any object, instrument, or weapon that is [inherently deadly] [or] [dangerous] [or one that is] used in such a way that it is capable of causing and likely to cause death or great bodily injury." (Original italics.)]; see *id.*, Bench Notes ["Give the bracketed phrase 'inherently deadly' and give the bracketed definition of *inherently deadly* only if the object is a deadly weapon as a matter of law." (Original italics.)].)

9

law, an objection is not required.  (*People v. Smithey* (1999) 20 Cal.4th 936, 976–977, & fn. 7; § 1259 [" 'The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.' "].)  In addition, there is an exception to the doctrine of forfeiture "if the substantial rights of the defendant were affected thereby."  (§ 1259.)  That exception applies here as well.

As in *Aledamat, supra*, 8 Cal.5th 1, "the trial court erred in presenting the jury with two theories by which it could find the [knife] a deadly weapon: (1) inherently or (2) as used."  Describing this scenario as "alternative-theory error" (*id*. at p. 9), the court explained that it arises when "[t]he first theory (inherently) is incorrect, but the second theory (as used) is correct" (*id*. at p. 7; see *People v. Stutelberg* (2018) 29 Cal.App.5th 314, 317).  An erroneous alternative theory can be either legally deficient (the instruction is simply incorrect as a matter of law) or factually inadequate (the instruction does not apply to the facts in the case).  (*Aledamat,* at p. 7.)  Thompson's case involves a legally inadequate alternative theory, as *Aledamat* did, since courts have held that a knife is not a deadly weapon per se.  (*Id*. at p. 8.)  And in *Aledamat*, the Supreme Court held that such an error calls for reversal unless we can say it is harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

The sharp-edged weapon at issue in *Aledamat* was a box cutter. (*Aledamat, supra*, 8 Cal.5th at p. 5.)  On the evidence presented, the defendant thrust the box cutter at the victim while threatening to kill him. (*Id*. at p. 4.)  Applying the *Chapman* standard by "examining the entire cause, including the evidence, and considering all relevant circumstances" (*id*. at p. 3), the *Aledamat* court found the error there to be harmless beyond a

reasonable doubt (*id*. at pp. 3–4).  In closing argument, the prosecutor in *Aledamat* made a vague reference to the inherent deadliness of the box cutter, but without elaborating or otherwise connecting the comment to the offending instructional language.  (*Id*. at p. 14.)  Given the strength of the evidence of actual use of the box cutter in a manner that was deadly, the Supreme Court inferred from the strategy the defendant pursued at trial (he claimed he did not assault the victim at all) that his trial counsel likely saw it as futile to contest his use of the box cutter as a deadly weapon.  (*Ibid*.)

The court also pointed to instructional language requiring the jury to " 'consider all of the surrounding circumstances including when and where the object was possessed and any other evidence that indicates whether the object would be used for a dangerous rather than a harmless purpose.' " (*Aledamat*, *supra*, 8 Cal.5th at p. 14.)  In light of this broader instruction, the court found it was unlikely the jury made improper use of the inherent deadliness language.  (*Ibid*.)  Giving the instructions a commonsense construction, the court observed, the jury would have necessarily understood the box cutter to be deadly "in the colloquial sense of the term—i.e., readily capable of inflicting deadly harm—and [found that] defendant used it as a weapon."  (*Id*. at p. 15.)

Upon consideration of the record as a whole, the court determined that "the jury necessarily found the following:  (1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person."  (*Aledamat*, *supra*, 8 Cal.5th at p. 15.)  " 'No reasonable jury that

11

made all of these findings,' " the court concluded, " ' could have failed to find' that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid.*, citing *People v. Merritt* (2017) 2 Cal.5th 819, 832.)

We cannot say the same thing here. In closing argument, the prosecutor read from the portion of CALCRIM No. 3145 quoted above that gave the jury two ways to find the knife to be deadly, and immediately after doing so argued that the knife was inherently deadly. He made this argument in the context of his acknowledgment that the knife was small, but capable of doing grievous harm. As in *Aledamat*, the Attorney General points out, there was "consider all of the circumstances" language in the instruction Thompson's jury received. (*Aledamat*, *supra*, 8 Cal.5th at p. 14.) But because of the prosecutor's use of the offending instructional language in closing argument, we are unable to say that "no one ever suggested to the jury that there were two separate ways it could decide whether the box cutter was a deadly weapon" (*ibid.*), so the "consider all of the circumstances" language does not cure the potential for misuse.

As a fallback, invoking another strand of the harmless error analysis in *Aledamat*, the Attorney General argues it was uncontested the knife was used as a deadly weapon because Thompson's defense at trial focused on his insistence that he never pulled out a knife. As a result, the Attorney General suggests, when the jury rejected Thompson's testimony on that point, which it clearly did, the prosecutor's argument that the knife was a deadly weapon stood unrebutted. We are not persuaded. As we read the record, in a marginal case for actual use of the knife as a deadly weapon, the prosecutor employed the inherent deadliness prong of CALCRIM No. 3145 as a way to close any evidentiary gap the jury might have perceived on that issue. This

12

is where the *Chapman* beyond-a-reasonable-doubt standard matters.  That burden has not been met on this record.

## DISPOSITION

The jury's true finding under section 12022, subdivision (b)(1) and the sentence enhancement imposed upon that finding are vacated.  In all other respects, the convictions and sentence are affirmed.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

13