[No. A066726. First Dist., Div. Three. Feb. 22, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE EDWARD SIMONS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts C., D., and E.

COUNSEL

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CORRIGAN, J.**—Defendant was found guilty by a jury of two counts of exhibiting a deadly weapon to prevent arrest and one count of vehicular evasion of a peace officer, all felonies. The jury found him not guilty of three counts of assault with a deadly weapon on a peace officer and of hit

and run. They were unable to reach a verdict on a charge of interference with a police dog. The court found defendant's prior serious felony convictions true and sentenced him to 13 years in state prison.[1] Defendant appeals alleging various errors, including the failure to instruct that misdemeanor resisting or obstructing a peace officer (Pen. Code, § 148, subd. (a))[2] is a lesser offense of felonious exhibition of a deadly weapon to evade arrest (§ 417.8). He also asserts that a screwdriver can never be a deadly weapon for purposes of section 417.8.[3] We reject defendant's assertions and affirm the judgment.

### Statement of Facts

About 3 a.m. on March 21, 1993, East Palo Alto Police Officer Reich stopped defendant's car for an expired registration and failure to signal for a left turn. Defendant presented an expired driver's license. After the officer completed the traffic citation, defendant walked toward his car, as if.to drive away. The officer told defendant he would not be allowed to drive and the automobile would have to be towed. Defendant became angry and ran to his car. As defendant was trying to start the vehicle, the officer grabbed both defendant and the car door. Defendant drove forward with the officer still holding on. After approximately 30 feet, the officer fell free of the car, and defendant sped away.

Officer Reich pursued defendant with lights and siren. Defendant ran a red light, briefly lost control of his car, and entered the southbound 101 freeway. Defendant briefly left the freeway by an exit ramp. He then tried to reenter the freeway but was traveling too fast. He lost control, coming to a stop facing the wrong direction on the on-ramp. Reich stopped and approached defendant's car on foot, ordering him out at gunpoint. Defendant instead restarted his car, which lurched forward striking the officer slightly. Defendant then began backing onto the freeway. After making contact with another police car, he spun around and headed back onto the freeway in the proper direction.

Officers pursued defendant into the City of Mountain View. There, defendant left the freeway at 70 to 80 miles per hour and led several officers on a chase through the city. Officer Peardon testified that, at one point, defendant backed into his squad car. Finally, defendant jumped out of his still-moving vehicle and fled on foot. His car continued until it crashed into a tree.

[1] The court imposed three-year (midterm) concurrent sentences on each conviction and an additional ten years for the two prior serious felony convictions.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] Defendant raises other issues that we have addressed in the unpublished portion of this opinion.

As defendant fled into an apartment complex, Officer Peardon pointed his gun at him and ordered him to the ground. Defendant turned, with a screwdriver in hand, and said, "[F]uck you. Shoot me." Defendant then ran into the building and into his mother's apartment. His mother testified defendant entered the apartment saying, "They are trying to kill me, they tried to push my car off the road."

After Peardon and Reich broke open the apartment door, defendant held them at bay with the screwdriver. Reich described defendant at this time: "He would flail his hands, show the screwdriver, if we were to approach he would bring the screwdriver forward toward us. He was pacing back and forth." When asked if he felt threatened by defendant, the officer testified: "I would take the fact that we were telling him to drop the screwdriver and him waving it at us in this fashion, yelling, come on, kill me, go ahead, come on in; I would say that's threatening."

Although several other officers arrived, defendant continued to hold the screwdriver in a threatening way and ordered the officers to stay back. A police dog was brought into the apartment, but defendant threatened to stab the dog. Finally, officers distracted defendant by throwing a chair at him. After a brief struggle, he was subdued.

## DISCUSSION

### A. *Can a Screwdriver Be a Deadly Weapon Under Section 417.8?*

■ Defendant urges reversal of his convictions for exhibiting a deadly weapon to prevent arrest, alleging a screwdriver is not a deadly weapon for the purposes of that statute. We disagree and hold that, on these facts, the exhibition of a screwdriver to a peace officer with the intent to resist or prevent arrest is a violation of section 417.8.[4]

Section 417.8 prohibits the drawing or exhibiting of a deadly weapon with the intent to resist or prevent the arrest or detention of oneself or another by a peace officer. ■ We recite the long-held distinction between weapons that are inherently deadly or dangerous and those that are deadly or dangerous based only on the facts of the particular occasion in question: " 'There

---

[4]Defendant claims the court erred when twice during instructions it referred to section 417.8 as brandishing a weapon to prevent arrest, without using the modifier "deadly." The court's shorthand reference is of little significance. When the court gave the substantive instruction, it plainly set forth the requirement that the weapon be deadly. Defendant also alleges error because the court merely read the statutory definition of the crime and did not parse out the separate elements of the offense. Defendant offers no authority for his position, and we decline to adopt it.

are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. The instrumentalities falling in the first class, such as guns, dirks and blackjacks, which are weapons in the strict sense of the word and are "dangerous or deadly" to others in the ordinary use for which they are designed, may be said as a matter of law to be "dangerous or deadly weapons." This is true as the ordinary use for which they are designed establishes their character as such. The instrumentalities falling into the second class, such as ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and other sharp or heavy objects, which are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed, may not be said as a matter of law to be "dangerous or deadly weapons." When it appears, however, that an instrumentality other than one falling within the first class is capable of being used in a "dangerous or deadly" manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.' " (*People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153], quoting *People* v. *Raleigh* (1932) 128 Cal.App. 105, 108-109 [16 P.2d 752]; see also *People* v. *Brookins* (1989) 215 Cal.App.3d 1297, 1305 [264 Cal.Rptr. 240].)

▪ Based upon the foregoing distinction, we can say without hesitation that the screwdriver exhibited by defendant here, while not an inherently deadly weapon, was a deadly weapon on this particular occasion. The evidence clearly demonstrated that the screwdriver was capable of being used as a deadly weapon and that defendant intended to use it as such if the circumstances required.

Defendant erroneously argues that section 417.8 can apply only to the exhibition of inherently dangerous or deadly weapons because ordinarily innocuous items require some dangerous or deadly use in order to transform them into dangerous or deadly weapons. Further, he reasons, any such use would constitute an assault with a dangerous or deadly weapon on a peace officer in violation of section 245, subdivision (c), thereby subsuming all violations of section 417.8. However, the circumstantial evidence required to transform an innocuous object into a deadly weapon is not necessarily as substantial as evidence that proves an *assault* with that weapon. The former requires only that the object be capable of deadly use and that the defendant intends to so use it if need be. Assault with a deadly weapon requires "an unlawful attempt, coupled with a present ability, to commit a violent injury

on the person of another." (§ 240.) Merely because this defendant's conduct might also be characterized as an assault with a deadly weapon upon an officer does not mean it cannot also constitute the exhibition of a deadly weapon.

Both section 417.8 and section 245, subdivision (c) proscribe the use of a deadly weapon; the former to evade arrest, the latter to assault a peace officer. Defendant's analysis suggests the term "deadly weapon" is defined differently for each section, such that the trier of fact may consider the circumstances of the incident to determine if an otherwise innocuous item, like a screwdriver, was a deadly weapon for the purposes of section 245, subdivision (c) but not section 417.8. We cannot agree. If the evidence supports a finding that the screwdriver was capable of being used as a deadly weapon and that defendant intended to use it as one if need be, it is a deadly weapon under either section. The record here supports such a finding. The distinction between the two sections rests not upon the nature of the weapon involved, but upon what is done with the weapon.

### B. *Is Section 148, Subdivision (a) a Lesser Offense of Section 417.8?*

 Defendant alleges error in the court's failure to instruct the jury they could find defendant guilty of violating section 148, subdivision (a) as a lesser offense of section 417.8. The question of whether section 148, subdivision (a) is a lesser offense of section 417.8 is one of first impression. We conclude section 148, subdivision (a) is not a lesser included offense of section 417.8. Further, on the facts of this case, it was not a lesser related offense. Consequently, no error occurred.

 Lesser offenses fall into two categories: included offenses and related ones. We first consider lesser included offenses. "[A]n offense is necessarily included in the charged offense if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed. [Citation.]" (*People* v. *Geiger* (1984) 35 Cal.3d 510, 517, fn. 4 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].) The court has a sua sponte duty to instruct on necessarily included offenses when the evidence raises a question as to whether all the elements of the charged offense have been proved and there is evidence of the lesser offense that would justify a conviction. (*People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613].)

 The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a

peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. (*People* v. *Lopez* (1986) 188 Cal.App.3d 592, 600, fn. 3 [233 Cal.Rptr. 207]; CALJIC No. 16.102 (5th ed. 1988 bound vol.).) Defendant cannot be convicted of an offense against an officer engaged in the performance of official duties unless the officer was acting lawfully at the time. (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1217 [275 Cal.Rptr. 729, 800 P.2d 1159].) "The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in 'duties,' for purposes of an offense defined in such terms, if the officer's conduct is unlawful. [Citations.]" (*Ibid.*)[5]

 Here, defendant was charged in the statutory language with violation of section 417.8, the elements of which are (1) the drawing or exhibiting of a firearm or a deadly weapon, (2) with the intent to resist or prevent arrest or detention of oneself or another by a peace officer. There is no requirement that the officer be engaged in the performance of his or her duties. Thus, a defendant violates section 417.8 when he exhibits a deadly weapon with the intent of preventing any arrest, lawful or unlawful. This result comports with section 834a, which sets forth the citizen's duty to refrain from using force or any weapon to resist either lawful or unlawful arrests. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 352 [74 Cal.Rptr. 713, 450 P.2d 33], disapproved on other grounds in *People* v. *Gonzalez, supra,* 51 Cal.3d at p. 1222.)

The chief evil to be avoided by criminalizing exhibition of weapons is the potential for further violence, not only by the defendant, but also by others in response to the defendant's action. For example, section 417, subdivisions (a)(2) and (c) prohibit the brandishing of any firearm, loaded or unloaded. Similarly, when a firearm is used, there is no requirement in section 417.8 that it be loaded. The mere act of exhibiting a weapon, while harmless per se, is dangerous by virtue of the violence it may engender. When a defendant

---

[5]This same requirement, that the victim officer be engaged in the performance of official duties, is an element of various crimes that concern violence against or resistance to government officers. We set out an illustrative, though not exhaustive, list: section 69 (resisting or deterring an executive officer by threat or violence), section 190.2, subdivision (a)(7) (special circumstance for murder of a peace officer), section 241, subdivision (b) (assault on a peace officer), section 241.1 (assault on a custodial officer), section 241.4 (assault on a school district peace officer), section 243, subdivisions (b) and (c) (battery on a peace officer), section 243.1 (battery on a custodial officer), section 245, subdivisions (c) and (d) (assault on a peace officer with a deadly weapon or force likely to produce great bodily injury), section 245.3 (assault on a custodial officer with a deadly weapon or force likely to produce great bodily injury), and section 417, subdivision (c) (brandishing a firearm in the presence of a peace officer).

violates section 417.8, the potential for violence is the same whether the initiating arrest was lawful or unlawful. In this context, the Legislature has chosen to shift the controversy over the legality of the arrest from the streets to a civil courtroom. A defendant may pursue a civil remedy for unlawful arrest, but he may not exhibit a deadly weapon to avoid that arrest.

Section 417.8 was added to the Penal Code by the Legislature in 1982, long after the court in *People* v. *Curtis*, *supra*, 70 Cal.2d at pages 354-355, discussed the significance of the "engaged in duty" requirement and section 834a. (Stats. 1982, ch. 142, § 2.5, p. 476.) We presume the Legislature was aware of that court's analysis. Additionally, the same legislative act also amended section 245. (Stats. 1982, ch. 142, § 1.2, p. 469.) That section contains the "engaged in duty" requirement for assaults on peace officers. (§ 245, subds. (b) & (c).) The Legislature could have quite easily included the same requirement in section 417.8. As noted above, a large number of similar statutes do contain the requirement. (See fn. 5, *ante*.) Consequently, the Legislature's failure to include in section 417.8 an element that the officer be engaged in the performance of official duties or that the arrest be lawful must be construed as an intentional election to forego that requirement. (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622].)

By virtue of this analysis, section 148, subdivision (a) is not a lesser included offense of section 417.8. One can violate section 417.8 without violating section 148, subdivision (a), by exhibiting a deadly weapon to evade an *unlawful* arrest. In other words, the lawfulness of the police conduct is an element of section 148, subdivision (a) not contained in section 417.8. Thus, the court had no sua sponte duty to instruct the jury as to section 148, subdivision (a).

 We now consider whether, on the facts of this case, section 148, subdivision (a) is a lesser related offense to section 417.8. An offense is a lesser related offense to that charged if three criteria are met. First, there must be "some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged. [¶] Second, the offense must be one closely related to that charged and shown by the evidence. . . . Although some evidence offered by the People or the defendant may indicate that the defendant has committed a crime other than that charged, instructions regarding that crime need not be given unless the evidence is also relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense. [¶] Finally, the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related

offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, unless the defendant argues that the evidence at most shows guilt only of the related offense." (*People* v. *Geiger, supra,* 35 Cal.3d at pp. 531-532, fn. omitted.)

Defendant's argument that section 148, subdivision (a) is a lesser related offense to section 417.8 fails to meet the first criterion. On these facts, there is no basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged. Defendant never disputed that he used the screwdriver to fend off police. His counsel argued that defendant was never close enough to the officers to hurt them and that defendant was merely forestalling his inevitable arrest, not actually preventing it. Neither argument is a defense to the charge.

Thus, there was no doubt that defendant exhibited a weapon in the officers' presence and that he did so with the intent to resist arrest. Furthermore, the factual question of whether the weapon used here was deadly could rationally have been resolved only against defendant. On this record, the screwdriver was clearly capable of being used as a deadly weapon. Moreover, the evidence demonstrated that defendant not only intended to use the screwdriver as a weapon but actually did use it as a weapon. One can certainly use a weapon without inflicting injury with it, by pointing a gun, for example. (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672-673 [102 Cal.Rptr. 776, 498 P.2d 1024].) Defendant's repeated gesturing with the screwdriver, coupled with his statements to police, constitute a use of the screwdriver as a weapon.

The jury was free to find defendant not guilty of the charge. We inquire only whether they rationally could have found him guilty of something less than the charge. While one could postulate scenarios under which a jury's decision to ignore the law or to be sympathetic to a defendant might result in a verdict of guilt on a lesser offense, that is not the test for the giving of lesser offense instructions. Some rational basis in law and fact must exist upon which the jury could reasonably find that the greater offense had not been proven but that the lesser one had. No such basis exists here. The trial court properly refused to instruct on section 148, subdivision (a) as a lesser offense.

C.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* at page 1100.

## DISPOSITION

The judgment is affirmed.

Chin, P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 1996. Chin, J., did not participate therein.