Filed 7/14/21  P. v. Buckley CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058968 |
| v. | (Super. Ct. No. 18CF3174) |
| JAMES WILLIAM BUCKLEY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge.  Affirmed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant was charged and convicted of arson and resisting a peace officer. The charges stemmed from a fire occurring in his residence, a unit in a multi-family structure in Santa Ana. When firefighters from the Orange County Fire Authority (OCFA) arrived, appellant let them into the home willingly. However, his demeanor changed when they began questioning him about the start of the fire. He became combative and uncooperative and OCFA had to call in police reinforcements, who arrested him. Prior to his arrest, authorities noticed ammunition in the home, and after his arrest, two firearms and more ammunition were discovered in a search of the home and of his person. One of these firearms was a loaded shotgun located near the spot where appellant was detained. At trial, appellant sought to exclude introduction of these weapons and ammunition, arguing they were prejudicial and cumulative. The trial court denied the motion. We affirm.

## FACTS

On the evening of November 8, 2018, the OCFA responded to a report of smoke inside the Santa Ana structure where appellant lived. The fire emanated from a broken front window in appellant's unit. OCFA Fire Captain Zebulon Hawkins knocked on the door, and appellant answered, inviting firefighters in. Hawkins saw there was significant smoke coming from the direction of the bedroom and hallway nearby. Upon entering the bedroom, he noticed the smoke came down to his shoulders. On the bed was a smoldering fire.

With gusty and dry weather conditions, including Santa Ana winds, firefighters moved quickly to try to put out the fire on the bed before it spread. Because the smoke was so thick in the room, Hawkins told appellant they had to leave the property immediately.

Outside, Hawkins began to question appellant about how the fire may have started, and noticed appellant grew "increasingly more agitated" in response to his

2

questions. This was in contrast to the "nonchalant" manner in which appellant had first greeted him at the door. After only a few questions, appellant ran back into the home. Not knowing his intentions, and whether his firefighters were in any danger from appellant, Hawkins ran after him and ultimately was able to block his path in the entryway of the home. He asked appellant to leave several times. Appellant, "extremely agitated," and "uncooperative," refused to do so.

Hearing the commotion, other firefighters inside the residence came out to see what was going on, leaving the situation in the bedroom unattended. Because of appellant's behavior, they called for police assistance as well as an arson investigator. They did not feel they could adequately deal with appellant and address the fire threat simultaneously. The request, made through dispatch, was for a "Code 3" response, meaning police would use lights and sirens. Despite his combative conduct, appellant never physically attacked the firefighters but they noted several bullets lying around, which made them more concerned about the risk he might pose to their safety.

OCFA Fire Captain and Investigator James Cass arrived on scene to investigate the cause of the fire and to assist with appellant. Upon entering the home, Cass saw .22 caliber ammunition sitting out in the open. He located appellant inside the bedroom and told him three times in short succession that he needed to leave the property. But again, appellant would not comply with the commands. Cass noted that appellant had a "tense stance," an "uncooperative nature," and seemed erratic. ". . . [H]e kept looking back and over to the closet area," and "turned at one point and moved his hand over to the closet." Cass was not sure what was in the closet, or what appellant was trying to do. Appellant was wearing a heavier coat which might conceal a weapon suited for the ammunition Cass had just seen. All of this made him apprehensive about

3

appellant's intentions. He detained appellant – who resisted – and forcibly removed him from the home.[1]

Outside on the sidewalk, Cass and another Santa Ana police officer began searching appellant. In one pocket, they discovered three green shotgun shells. They also found an unknown liquid and a multicolored disposable lighter, which was functioning.

Back inside the home, Santa Ana police officers recovered a loaded Remington shotgun from an area in the ceiling connected to the attic. This was in the vicinity of the closet into which appellant had previously been seen reaching. Also discovered in the home were an unloaded .22-caliber rifle, ammunition for the rifle, and four more 12-gauge shotgun shells.

After appellant was taken into custody, Cass began investigating the potential origin and cause of the fire. He found there were two fires – one on the mattress of the bed and the other next to the bed near the windowsill. At trial, he opined the windowsill fire was intentionally set, and neither fire appeared to be accidental.

The operative information charged appellant with one count of arson of an inhabited property (Pen. Code, § 451, subd. (b)), resisting a peace officer (Pen. Code, § 148, subd. (a)(1)), and possession of a controlled substance paraphernalia (opium pipe) (Health & Saf. Code, § 11364, subd. (a)). A jury convicted him on all counts and he was sentenced to three years in prison.

---

[1] Cass described appellant's removal as "forcible" because even after being handcuffed and marched toward the front door, appellant was resisting forward movement and had to be forced through the door. He seemed to want to go toward the living room.

4

## DISCUSSION

Appellant challenges the trial court's rulings on two motions in limine. The first motion was to exclude reference to the shotgun shells discovered on his person at the time of arrest because said evidence was irrelevant. The second was to exclude reference to police or OCFA authorities finding a shotgun, .22-caliber rifle, switchblade, and ammunition in the home after his detention because this evidence was cumulative and prejudicial.[2] The prosecutor argued all of the evidence helped corroborate the concerns of police officers and Cass, who was the subject of the second charged count under Penal Code section 148.

A trial court has wide discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (See Evid. Code, § 352.)[3] "A trial court's exercise of discretion under section 352 will be upheld on appeal unless the court abused its discretion, that is, unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*People v. Thomas* (2012) 53 Cal.4th 771, 806.) And even the erroneous admission of evidence does not warrant reversal of a conviction unless a proper objection was made and the error resulted in a miscarriage of justice. (See § 353.)

Appellant likens this case to *People v. Riser* (1956) 47 Cal.2d 566, in which the California Supreme Court found error in the admission of a Colt .38 revolver, two holsters, two leather belts, and a box of .22 shells into evidence at the trial of two brothers charged with murdering the husband and wife proprietors of a café in Stanislaus County. (*Id.* at pp. 572, 576-577.) These items were discovered in the defendants' cars almost two weeks after the murders, which were committed using a Smith and Wesson .38

---

[2] Evidence about a switchblade was never introduced at trial, so we do not review this aspect of the motion.

[3] All statutory references are to the Evidence Code unless otherwise indicated.

5

Special revolver. (*Id.* at pp. 573, 576.) Because the prosecution knew the specific type of weapon used to commit the crime, our Supreme Court ruled "it [wa]s error to admit evidence that other weapons were found in [defendant's] possession, for such evidence tends to show, not that he committed the crime, but only that he is the sort of person who carries deadly weapons." (*Id.* at p. 577.) Appellant believes the same principle applies here, where the weapons and ammunition could not possibly have started the fire he was charged with setting. He misapprehends their relevance.

The presence of the weapons and ammunition in appellant's home was not probative on the arson count, but rather on the resisting count under Penal Code section 148. "The longstanding rule in California and other jurisdictions is that a defendant cannot be convicted of an offense against a peace officer "'*engaged in . . . the performance of . . .* [his or her] *duties*'" unless the officer was acting lawfully at the time the offense against the officer was committed. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1217, original italics; see also *People v. Simons* (1996) 42 Cal.App.4th 1100, 1109.) 'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . . [¶] . . . [T]he lawfulness of the victim's conduct forms part of the corpus delicti of the offense.' (*People v. Gonzalez*, *supra*, 51 Cal.3d at p. 1217.)" (*In re Manuel G.* (1997) 16 Cal.4th 805, 815.)

Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) Here, the disputed evidence had the tendency to prove the reasonableness of the responding authorities' fears, and thus the lawfulness of appellant's arrest. When Hawkins and other firefighters were trying to keep appellant from reentering the home, they noticed bullets on the ground or on a pony wall near the entryway. After he arrived, Cass testified to observing .22-round ammunition lying about. It exacerbated his concern about appellant's intentions when he began moving toward the closet while wearing a

6

heavy coat. The loaded shotgun was later discovered in a ceiling space near that same closet. Shells for the shotgun were in appellant's pocket when he was arrested. And the .22-round ammunition matched the unloaded rifle discovered on the property. The weapons and ammunition were indeed "interconnected," as the trial court observed, and supported Cass' detention of appellant.[4] The combination of a suspicious fire and a jittery and erratic occupant with firearms and ammunition justified a detention which the jury would understand as the lawful performance of the investigator's duties. The rule in *Riser* cannot help appellant here.

Neither was the evidence prejudicial or inflammatory. "'The prejudice which exclusion of evidence under [] section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' (*People v. Karis* (1988) 46 Cal.3d 612, 638; *People v. Yu* (1983) 143 Cal.App.3d 358, 377.) 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) The evidence in question here was not introduced for such effect. The jury was not being asked to judge appellant harshly due to the fact he possessed weaponry. They were being asked to consider the possibility that the authorities on the scene could reasonably have been concerned that he might have been seeking to *use* said weaponry against them at the time he was arrested.

The court's rulings were spot on.

---

4       For similar reasons, we disagree with appellant that the evidence was cumulative. While the trial court does have discretion to exclude cumulative evidence under section 352 (see *Horn v. General Motors Corp.* (1976) 17 Cal.3d 359, 371), evidence is not made cumulative simply because it is "identical in subject matter to other evidence." (See *People v. Scott* (2015) 61 Cal.4th 363, 399.) Even identical types of evidence can have differing levels of "'evidentiary weight or probative value.'" (*Ibid*, quoting *People v. Mattson* (1990) 50 Cal.3d 826, 871.) The rifle and matching ammunition corroborated Cass' initial suspicions about appellant. Shells for the shotgun in appellant's pocket suggested he might have intended to make immediate use of the shotgun located not far away from him. Each piece of evidence had a separate role to play.

## DISPOSITION

The judgment is affirmed.


                                        BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.