Filed 5/12/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075745 |
| v. | (Super.Ct.No. BAF1801192) |
| RODRIGO FUENTES, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Mark A. Mandio, Judge. Affirmed.

Rex Adams Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Warren J. Williams and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, defendant and appellant Rodrigo Fuentes, Jr. was convicted of two crimes: (1) fleeing a police officer while driving with a willful or wanton disregard for the safety of persons or property (wanton disregard while fleeing) pursuant to Vehicle Code section 2800.2; and (2) resisting a police officer pursuant to Penal Code

1

section 148, subdivision (a)(1).  He raises an issue of first impression by contending that the latter crime is a lesser included offense of the former.  We hold that resisting a police officer is not a lesser included offense of wanton disregard while fleeing.  We reject his other contentions (except for a custody calculation issue the parties agree on) and affirm.[1]

## I.  BACKGROUND

While on patrol in Hemet one afternoon in September 2018, Detective Matthew Chavez, who had investigated several dozen stolen car cases, saw a car of a type he knew was frequently stolen.  His partner ran a records check on the license plate, which confirmed that it had been reported stolen.  The officers pulled over the car and told the driver to put his hands up and outside the window.  The driver, later identified as Fuentes, complied.  The officers told Fuentes to open the driver's side door and exit.  Fuentes put one foot on the ground but then got back into the car and drove off.

The officers pursued Fuentes.  Fuentes ran a stop sign, crossed over into oncoming traffic, and eventually crashed the front of the car into a brick wall.  Fuentes then started running.  Chavez, starting on foot about three or four car lengths behind, chased him.  Chavez saw Fuentes reach for something in his waistband, so Chavez shot a taser gun at him.  The taser was ineffective, perhaps because the dart did not penetrate Fuentes's clothing, and Fuentes kept running.  Chavez caught up and struck Fuentes on the head with the taser gun out of a concern that Fuentes might arm himself and jeopardize

---

[1]  Undesignated statutory references are to the Penal Code.

2

Chavez. Chavez struck Fuentes one more time with his fist, his partner caught up, and the two arrested Fuentes.

Fuentes was charged with receiving a stolen vehicle (§ 496d, subd. (a); count 1), wanton disregard while fleeing (Veh. Code, § 2800.2; count 2), resisting a police officer (§ 148, subd. (a)(1); count 3), and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 4). The Information also alleged Fuentes had four prior felony convictions (former § 667.5, subd. (b)) and a prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

Fuentes pled guilty to count 4. A jury found him guilty on counts 2 and 3 and not guilty on count 1. Fuentes waived his jury right on the prior conviction allegations, and the trial court found him guilty on the prior strike. The parties agreed the four prior felony conviction allegations should be dismissed due to a change in the law.

The trial court sentenced Fuentes to four years for count 2 (two years doubled to four due to the prior strike) and to 180 days each on counts 3 and 4, to run concurrent with the sentence for count 2. It then awarded Fuentes 1,460 days of presentence custody and conduct credit and, because the credit meant he had served his full sentence, released him on parole.

## II. DISCUSSION

Fuentes raises five issues: first, that the conviction for resisting a police officer must be reversed because it is a lesser included offense of wanton disregard while fleeing; second, that the conviction for wanton disregard while fleeing must be reversed

3

because of an error in the jury instructions; third, that the punishment for resisting a police officer should be stayed under section 654 because it and the wanton disregard while fleeing charge arose from an indivisible course of conduct; fourth, that we should review Fuentes's motion brought under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); and fifth, that he should have been awarded an additional four days of presentence custody and conduct credit.

We agree with Fuentes that he should have been awarded an additional four days of credit. However, we find no error in the convictions on counts 2 and 3, find support for a determination that section 654 did not apply, and find no abuse of discretion in the trial court's denial of the *Pitchess* motion.

A. *Lesser Included Offense*

Fuentes contends that count 3, resisting a police officer (§ 148, subd. (a)(1)), is a lesser included offense of count 2, wanton disregard while fleeing (Veh. Code, § 2800.2, subd. (a)). We disagree.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged."'" (*People v. Reed* (2006) 38 Cal.4th 1224, 1226 (*Reed*).)

"A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the

4

latter is a lesser included offense within the former.'" (*Reed*, *supra*, 38 Cal.4th at p. 1227.) The exception exists because "[t]o permit conviction of both the greater and the lesser offense '"'would be to convict twice of the lesser."'"" (*People v. Ortega* (1998) 19 Cal.4th 686, 705.)

There are two tests to determine whether an offense is a lesser included offense of another, but Fuentes relies on only the elements test. (Because this case involves multiple convictions of charged offenses, the other test, known as the "accusatory pleading test[,] does not apply." (*Reed*, *supra*, 38 Cal.4th at p. 1229.)) "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." (*Id.* at p. 1227.)

Wanton disregard while fleeing, the supposed greater offense here, is found at Vehicle Code Section 2800.2 and is defined as a greater offense of evading a police officer in a vehicle, which is found in Vehicle Code Section 2800.1. Evading a police officer in a vehicle occurs when a person flees or otherwise eludes an officer's vehicle, if the officer's vehicle "is distinctively marked," "is sounding a siren as may be reasonably necessary," "is operated by a peace officer . . . [who] is wearing a distinctive uniform," and "is exhibiting at least one lighted red lamp visible from the front" (and "the person either sees or reasonably should have seen the lamp"). (Veh. Code, § 2800.1, subd. (a).) Wanton disregard while fleeing calls for criminal punishment when "a person flees or attempts to elude a pursuing peace officer in violation of [Vehicle Code] Section 2800.1

5

and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." (Veh. Code, § 2800.2, subd. (a).) Damaging property or committing at least three traffic "point" violations while the driving occurs automatically constitutes willful or wanton disregard for the safety of persons or property. (*Id.* at subd. (b).)

The alleged lesser offense here, resisting a police officer, calls for criminal punishment when a person "willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." (§ 148, subd. (a)(1).)

"'[T]he lawfulness of the officer's conduct is an essential element of the offense'" of resisting a police officer. (*People v. Williams* (2018) 26 Cal.App.5th 71, 82, italics removed.) "'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful.'" (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1109.)

We conclude resisting a police officer is not a lesser included offense of wanton disregard while fleeing because it is not the case that "all legal elements of the lesser offense are also elements of the greater." (*People v. Bailey* (2012) 54 Cal.4th 740, 748.) Resisting a police officer requires that the officer be performing a lawful duty, but wanton disregard while fleeing does not include that element. It merely requires that the officer wear a "distinctive uniform" and that her vehicle do certain things, such as be

6

"distinctively marked" and show a "lighted red lamp." (Veh. Code, § 2800.1, cited in Veh. Code, § 2800.2, subd. (a).)

Consequently, if an "arrest is unlawful," the defendant "may not be convicted of violating . . . section 148" by resisting the officer. (*People v. Southard* (2021) 62 Cal.App.5th 424, 435; *People v. Gerberding* (2020) 50 Cal.App.5th Supp. 1, 4 [reversing section 148 conviction for resisting an unlawful arrest made due to an unreasonable mistake of law].) Fleeing from an officer seeking an unlawful arrest might not violate section 148, but it could nevertheless violate Vehicle Code section 2800.2, as to which the lawfulness of the officer's actions does not matter. For instance, if a uniformed officer sought to arrest someone to harass them, rather than due to probable cause of a criminal violation, the flight from that officer would not constitute resisting an officer, but it could sustain a conviction for wanton disregard while fleeing.

Likewise, it is possible for an officer to use excessive force (and thus not be discharging an official duty) while wearing a uniform. (See *People v. White* (1980) 101 Cal.App.3d 161, 167 [no criminal liability for resisting a police officer if "the arrest was made with excessive force"].) The use of unlawful excessive force would not provide a defense to a Vehicle Code section 2800.2 charge. Ultimately, then, one can satisfy all the elements of a charge of wanton disregard while fleeing without satisfying the lawfulness element of a charge of resisting a police officer. If a uniformed officer uses excessive force to arrest an individual, who then enters a vehicle and flees with wanton disregard,

7

that driver would have violated Vehicle Code section 2800.2 by the flight but could not be convicted of resisting the unlawful arrest.[2]

In *People v. Simons*, *supra*, 42 Cal.App.4th 1100 (*Simons*), the Court of Appeal considered a question similar to ours: whether resisting a police officer was a lesser included offense of exhibition of a deadly weapon to evade arrest (§ 417.8). (*Id.* at p. 1105.) Concluding that it was not, the court observed that exhibition of a deadly weapon to evade arrest does not require "that the officer be engaged in the performance of his or her duties." (*Id.* at p. 1109.) It also noted that "[t]he chief evil to be avoided by criminalizing exhibition of weapons is the potential for further violence, not only by the defendant, but also by others in response to the defendant's action." (*Id.* at p. 1109.) By not requiring an officer to be performing duties as an element of exhibition of a deadly weapon to evade arrest, *Simons* stated that "the Legislature has chosen to shift the controversy over the legality of the arrest from the streets to a civil courtroom. A defendant may pursue a civil remedy for unlawful arrest, but he may not exhibit a deadly weapon to avoid that arrest." (*Simons*, *supra*, at p. 1110.) That rationale carries equal force here.

Fuentes's arguments that resisting a police officer is a lesser included offense of wanton disregard while fleeing are unconvincing. He emphasizes, for example, that

---

[2] We acknowledge that someone who commits wanton disregard while fleeing will have also committed resisting a police officer in many cases. However, the elements test does not ask what likely happens when committing an offense. Rather, it asks what *must* have happened.

Vehicle Code section 2800, subdivision (a), an adjacent statute to the one for wanton disregard while fleeing, makes it a crime to willfully fail to comply with a peace officer's lawful order "when that peace officer *is in uniform* and *is performing duties* pursuant to any of the provisions of this code." However, that just shows that the Legislature knows how to make lawful performance of a duty a required element of a crime when it wants to do so. "'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.'" (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725; see also *In re Young* (2004) 32 Cal.4th 900, 907 ["'Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent'"]; *Simons*, *supra*, 42 Cal.App.4th at p. 1109, fn. 5 [listing several crimes "concern[ing] violence against or resistance to government officers" requiring "that the victim officer be engaged in the performance of official duties"].)

Fuentes also observes that Vehicle Code sections 2800, 2800.1, and 2800.2 fall under Vehicle Code Division 2, Chapter 4, Article 1, which is entitled "*Lawful* Orders and Inspections." (Italics added.) However, "[t]itle or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602.) Nothing express in Vehicle Code sections 2800.1 or 2800.2, which together define wanton disregard while fleeing, requires a lawful order.

9

Finally, Fuentes calls our attention to section 417, subdivision (c), which could be read to suggest that wearing a uniform implies the performance of duties. That provision punishes "[e]very person who, in the immediate presence of a peace officer, draws or exhibits any firearm . . . in a rude, angry, or threatening manner, and who knows, or reasonably should know, *by the officer's uniformed appearance* or other action of identification by the officer, *that he or she is a peace officer engaged in the performance of his or her duties*, and that peace officer is engaged in the performance of his or her duties." (§ 417, subd. (c), italics added.) According to Fuentes, since uniformed appearance implies the performance of duties in the context of section 417, the same implication must apply for wanton disregard while fleeing as well.

What this argument fails to appreciate, however, is that section 417, subdivision (c), also makes lawful performance of a duty an express requirement. The crime requires, as stated in the last clause of the quote above, "that the peace officer is engaged in the performance of his or her duties." If Fuentes's argument were correct—that uniformed appearance automatically implies the performance of duties—then this last requirement would be surplusage. "As [our Supreme Court has] stressed in the past, interpretations that render statutory terms meaningless as surplusage are to be avoided." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1010.)

We hold that resisting a police officer is not a lesser included offense of wanton disregard while fleeing, so the trial court did not err in allowing the jury to convict Fuentes of both crimes.

10

*B. Jury Instructions*

Fuentes contends that the jury instructions on wanton disregard while fleeing were erroneous because the instructions did not include the lawful performance of a duty as an element of the offense.

This argument is a corollary of, and premised on, his argument that resisting a police officer is a lesser included offense of wanton disregard while fleeing. Put another way, if—as Fuentes says— resisting a police officer is a lesser included offense of wanton disregard while fleeing, then lawful performance of a duty—which is an element of resisting a police officer—must also be an element of wanton disregard while fleeing, and the jury should have been told that.

As we have discussed above, however, lawful performance of a duty is not an element of wanton disregard while fleeing. Vehicle Code section 2800.2 does not expressly require the lawful performance of a duty and, as we have discussed, there is no appropriate basis for implying such an element.

Accordingly, Fuentes has not shown that the jury instructions were deficient.

*C. Section 654*

Fuentes next contends that in sentencing him to concurrent terms on counts 2 and 3, the trial court violated section 654's prohibition against multiple punishments for the same course of conduct. Fuentes did not raise this objection in trial court. We find no error.

Under former section 654, which was applicable at the time Fuentes was sentenced, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term, but in no case shall the act or omission be punished under more than one provision." (Although the statute has since been revised such that imposition of the longest potential term is no longer required, that change is not relevant here. Our analysis focuses on whether section 654 applies in the first instance.)

This restriction applies not only to a single act violating multiple code provisions, but also to an indivisible "'course of conduct'" violating several statutes. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1209.) Whether a course of conduct is divisible for purposes of section 654 depends on the intent and objective of the defendant. (*Ibid.*) If multiple offenses "'were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Correa* (2012) 54 Cal.4th 331, 336.) Additionally, "a court of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) And when, as here, a trial court sentences a defendant on multiple counts, a finding that section 654 does not apply is a "factual determination that must be sustained on appeal if supported by substantial evidence." (*People v. Osband* (1996) 13 Cal.4th 622, 730.)

Multiple punishments for a single course of flight from an officer could, in some cases, be prohibited by section 654. We agree, however, with the People that substantial

evidence supported the conclusion that Fuentes's flight by vehicle and flight on foot were not part of the same course of conduct. Although Fuentes' goal was to flee the pursuing officers, his flight on foot after crashing into a wall carried with it a new risk of violence for Fuentes, the pursuing officers, as well as potential bystanders. As Chavez testified, he believed Fuentes might have been reaching for something in his waistband during the foot flight, and thus he struck Fuentes when he caught up to him out of a concern for personal safety. (See also *People v. Hairston* (2009) 174 Cal.App.4th 231, 240 [continued flight after encountering successive officers justified multiple punishment due to the risk of harm each encounter created]; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [multiple punishment justified for successive shots fired because each shot could have put different people in danger].) Moreover, after crashing the car, there was time for Fuentes to "reflect and consider his next action." (*Ibid.*) Absent a trial court objection, the People had no reason to offer additional evidence from the officers about why the flight on foot might warrant different punishment than the flight in a vehicle. On this record, there was substantial evidence for the trial court's implied finding that section 654 was inapplicable.[3]

---

[3] Although the People have not contended that the issue is moot, we would not be able to give Fuentes any substantive relief even if we agreed with him. His sentence on count 3 was a 180-day term to run concurrent with the four year term on count 2, and he had already served more than 180 days by the time he was sentenced.

*D.* Pitchess *Review*

Before trial, Fuentes filed a *Pitchess* motion seeking discovery of the personnel records of one of the officers who pursued Fuentes. The trial court found that good cause existed to conduct an in camera review of the officer's personnel records. During the in camera proceeding, the trial court swore in the custodian of records and questioned the custodian about the officer's personnel file. The trial court reviewed the file, described the files it had reviewed, and concluded that there were no relevant material records to be disclosed. Fuentes requests that we review the sealed transcript of the in camera proceeding to determine if the trial court abused its discretion in concluding that nothing should be disclosed. The People do not oppose the request.

We have reviewed the sealed transcript of the trial court's in camera review and find that the trial court did not abuse its discretion in deciding the *Pitchess* motion.

*E. Presentence Custody and Conduct Credit*

"A defendant is entitled to credit for all days in presentence custody including the day of arrest and the day of sentencing." (*People v. Adams* (2018) 28 Cal.App.5th 170, 180.) Fuentes was arrested on September 17, 2018 and was sentenced exactly two years later on September 17, 2020. The trial court awarded Fuentes 730 days of presentence custody credit. The parties agree, as do we, that Fuentes should have been awarded 732 days of presentence custody credit instead. The parties also agree, as do we, that Fuentes should have been awarded 732 days of presentence conduct credit, rather than 730. (§ 4019.) Because Fuentes was released on parole immediately following the sentencing

14

hearing, the excess credits should be applied to his parole term.  (*In re Sosa* (1980) 102 Cal.App.3d 1002, 1005-1006; § 2900.5, subds. (a), (c).)

### III.  DISPOSITION

The judgment of conviction is affirmed.  The clerk of the superior court is directed to prepare an amended abstract of judgment to reflect 732 days each of presentence custody and conduct credit and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PUBLICATION

RAPHAEL

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.